## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE CASSESE and LOUIS CALIGIURI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITIBANK, N.A.<br><br>Defendant. | Case No.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Denise Cassese and Louis Caligiuri, mother and son (collectively "Plaintiffs"), individually on behalf of themselves and on behalf of all others similarly situated, bring this action, based upon personal knowledge as to themselves and on information and belief as to all other matters, against Citibank, N.A., ("Citibank" or "Defendant") and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs were the victims of identity theft in May 2022, resulting the electronic theft of over $14,000.00 from their Citibank savings account.  Plaintiffs immediately notified Citibank, and the police, of the electronic theft.  Citibank conceded the identity theft to Plaintiffs and that it permitted unknown third-parties to electronically steal and electronically transfer money belonging to Plaintiffs from their Citibank savings account.  Citibank has refunded *some* of the stolen money to Plaintiffs that it was able to recover.  However, adhering to Citibank's own flawed policies and despite Plaintiffs' many complaints, Citibank has unlawfully refused to refund over $4,400.00 that Citibank permitted to be stolen and electronically transferred from Plaintiffs' Citibank savings account.

2.      Citibank's policy and practice is to assess blame for the identity theft on the victims even where none exists, as here, so that Citibank can avoid refunding the stolen electronic transfers.

3.      In enacting the Electronic Fund Transfer Act ("EFTA"), Congress found that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. 15 U.S.C. § 1693(a).  Congress' purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id.* §1693(b). "The primary objective of [the EFTA] is the provision of individual consumer rights." *Id.* The EFTA and its accompanying Regulation E caps liability to victims of electronic transfer theft at $50.00, and requires banks to refund all monies above that amount.

4.      Similarly, the Uniform Commercial Code ("UCC") Article 4-A, enacted in nearly all States, protects consumers from liability against unauthorized wire transfers from their accounts. UCC Article 4 requires unauthorized wire transfers to be refunded to a customer's account, plus interest.

5.      Plaintiffs file this lawsuit on behalf of themselves and on behalf of a class of all similarly situated consumers to vindicate their rights for unauthorized transactions Citibank is obligated to prevent and remedy and refund.

6.      Plaintiffs and the Classes (defined below) bring this action for damages, restitution and reimbursement, as well as injunctive relief, pursuant to the EFTA, UCC Article 4-A, the New Jersey Consumer Fraud Act, New York General Business Law §349, negligence and unjust enrichment.

## JURISDICTION AND VENUE

7.      Original subject matter jurisdiction is valid in this district pursuant to 28 U.S.C. §1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693, *et seq.* Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the state statutory and common law claims arising from the same or substantially similar transactions that form the basis of the EFTA claim

8. The Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there is minimal diversity; (ii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative classes; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant. Defendant maintains its headquarters in this District and is authorized to do business in New York, maintains continuous and systemic contacts with New York and this District, does business in New York and this District specifically related to the claims alleged in this Complaint, and has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under 28 U.S.C. §1391.

## PARTIES

5. Plaintiffs Denise Cassese and Louis Caligiuri, mother and son, were residents and citizens of the State of New York when the Citibank savings account at issue was opened over 30 years ago. Both are presently residents and citizens of the State of New Jersey. The Citibank savings account ending 3701 that was subject to the identity theft and unlawful electronic fund transfer(s) is owned by Denise Cassese a/c/f Louis Caligiuri.

6. Defendant Citibank is one of the largest national banks and one of the largest mortgage lenders in the country. Defendant maintains its headquarters at 388 Greenwich Street in New York City within this District. Defendant enters into and/or maintains residential property mortgage agreements for property located throughout the country, including in New York.

## SUBSTANTIVE ALLEGATIONS

7.     "An unauthorized EFT [Electronic Funds Transfer] is an EFT from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit.   Regulation E, 12 C.F.R. §1005.2(m). Unauthorized EFTs include transfers initiated by a person who obtained a consumer's access device through fraud or robbery and consumer transfers at an ATM that were induced by force. Comments 2(m)-3 and 4."  Source:  *"Electronic Fund Transfers FAQs,"* Consumer Financial Protection Bureau, https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fundtransfers/electronic-fund-transfers-faqs/#financial-institutions-2    (last accessed October 26, 2022).

8.     "When a consumer's account access information is obtained from a third party through fraudulent means such as computer hacking, and a hacker uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E."  *Id.*

9.     So long as a consumer victim of an unauthorized EFT diligently reports the event to the financial institution that permitted the EFT, the consumer's liability is capped at $50.00.  EFTA, 15 U.S.C §1693g; Regulation E, 12 C.F.R. §1005.6(b).  Failures by the financial institution to refund all monies above that amount permit a private right of action, individually and as a class action, by the consumer victims against the financial institution.  EFTA, 15 U.S.C §1693m.

10.     Similar to the EFTA, UCC Article 4-A protects consumers from liability caused by unauthorized wire transfers from their accounts.  Unauthorized wire transfers are not effective or enforceable and must be refunded to customer's account, with interest.

11.     Plaintiff Cassese is a dependent of Social Security Disability whose disability payments were directly deposited to her Citibank savings account ending 3701.  She opened that Citibank savings account as custodian for her then-infant son more than 30 years ago.

12.     Plaintiffs are a victim of a sophisticated scam where third-party scammers hacked into and took control of Plaintiff Cassese's mobile phone on or about May 12, 2022.  Once that/those third-party(ies) took control of her mobile phone, Plaintiff Cassese no longer had access to her own mobile phone and could not send or receive text messages or telephone calls from that mobile phone.  Plaintiff Cassese did not voluntarily provide access to her mobile phone to the third-party criminals.

13.     On or about May 12, 2022, one or more third-party(ies) used their unauthorized access to Plaintiffs' Citibank phone and/or savings account to apply for and receive a $15,000.00 loan from Citibank, in Plaintiff Cassese's name.  That loan was approved by Citibank and deposited by Citibank into Plaintiffs' Citibank savings account ending 3701.  Neither Plaintiff Cassese nor Plaintiff Caligiuri had any knowledge of that loan and did not assist the third party criminals in applying for or receiving that loan.  Citibank negligently permitted one or more third-party(ies) to take a $15,000.00 loan in Plaintiff Cassese's name and deposit those funds in Plaintiffs' Citibank savings account ending 3701.

14.     Somehow using their access to Plaintiff Cassese's mobile phone, or in some other manner unknown to Plaintiffs, on or about May 12, 2022, one or more third party(ies) were able to initiate an unauthorized EFT or wire transfer using an electronic terminal, telephone, computer or magnetic tape from Plaintiffs' Citibank savings account ending 3701 in the amount of $29,000.00, comprising the $15,000.00 loan proceeds and an additional $14,000.00 of Plaintiffs' funds.  Citibank negligently permitted that unauthorized EFT.

15.     Plaintiffs do not know who initiated, or received, the unauthorized $29,000.00 EFT or wire transfer.  Plaintiffs did not themselves authorize, or receive, the $29,000.00 unauthorized EFT.

16.     According to Plaintiffs' online banking statements, maintained by Citibank, the unauthorized $29,000.00 EFT or wire transfer was sent by Citibank to "David Marrero."  That person is unknown to Plaintiffs and Plaintiffs did not authorize any EFT or wire transfer to any person, including a person named David Marrero or an account owned by David Marrero.

17.     *On the same day* as the unauthorized EFT or wire transfer, as soon as she learned of the fraud and was able to use a borrowed telephone, Plaintiff Cassese notified Citibank of the unauthorized EFT or wire transfer.

18.     Plaintiff Cassese diligently filed a police report reporting the unauthorized EFT or wire transfer.

19.     Plaintiff Cassese diligently reported the unauthorized EFT or wire transfer to the credit bureaus.

20.     Plaintiff Cassese diligently notified her mobile telephone carrier that one or more unknown third-party(ies) had hacked and taken unauthorized control of her mobile telephone.

21.     Plaintiff Cassese made a request directly to Citibank and it cancel the unauthorized $15,000.00 loan taken in her name and refund the $14,000.00 unauthorized EFT or wire transfer stolen from Plaintiffs' Citibank savings account.

22.     Citibank initially responded in writing to Plaintiff Cassese on August 2, 2022.  In that form letter, Citibank:  (i) acknowledged the unauthorized $15,000.00 loan; (ii) acknowledged the unauthorized $29,000.00 EFT or wire transfer from Plaintiffs' Citibank savings account, including $14,000.00 of Plaintiffs' own funds; (iii) acknowledged that Citibank had permitted the unauthorized loan and EFT or wire transfer; (iv) acknowledged that Plaintiff Cassese diligently

reported the unauthorized loan and EFT or wire transfer to Citibank; and (v) that a result of the unauthorized loan and EFT or wire transfer, Citibank would inform the "the credit reporting agencies to delete the delinquency [resulting from the unauthorized loan] from your credit report."

23.    That August 2, 2022 Citibank letter further advised Plaintiff Cassese that Citibank was "reversing" the unauthorized $15,000.00 loan taken in her name.

24.    That August 2, 2022 Citibank letter further advised Plaintiff Cassese that Citibank had "recovered" $9,590.89 of the stolen and unauthorize $14,000.00 EFT or wire transfer.  Citibank did not identify *how* or *from whom* or *where* Citibank "recovered" the $9,590.89.   After months of denying Plaintiffs' access to that $9,590.89, Citibank belatedly refunded that money to Plaintiffs.

25.    However, the August 2, 2022 Citibank letter advised Plaintiffs that Citibank was refusing to refund the remainder of the unauthorized $14,000.00 EFT or wire transfer, totaling $4,409.11.  The Citibank letter stated:  "The remaining $4,409.11 of your claim was denied due to the fraud reported was caused by providing customer account information or authorization for the transactions that were determined to be a scam."  While true that Plaintiffs were the victims of a scam, the remainder of that statement by Citibank is false and deceptive.

26.    Plaintiffs appealed and have complained to Citibank about its decision to not refund the $4,409.11 portion of the unauthorized EFT or wire transfer to Citibank on numerous occasions.  Citibank denied those appeals and has repeated its decision, in writing, to not refund the $4,409.11 portion of the unauthorized EFT or wire transfer stolen from Plaintiffs' Citibank savings account ending 3701.

27.    Citibank has taken that unlawful position, even while admitting in October 10, 2022 and December 12, 2022 letters to Plaintiff Cassese that "you fell victim to a fraudulent scheme …."  That letter continued by repeating Citibank's policy of not refunding unlawful EFTs or wire transfers when it (self-servingly) determines that Citbank was not at fault, even its own customer was the

victim of a fraudulent and unlawful EFT or wire transfer: "Citi does not offer coverage or reimbursement when a customer has fallen victim of [sic] a scam."

28.     In such cases, contrary to the EFTA and its regulations and UCC Article 4-A, Citibank blames the victim.  A September 23, 2022 letter from Citibank to Plaintiff Cassese stated: "You did not take adequate steps to safeguard your account.  This failure compromised the security of your account information and directly contributed to allowing the transaction(s) in question to take place."  That statement is false and deceptive, as apparently conceded in the October 10, 2022 and December 12, 2022 letters where Citi admits Plaintiffs were the victims of a "fraudulent scheme" and a "scam."

29.     Upon information and belief, it is Citibank's policy and procedure to deny refunds and blame unauthorized EFTs and wire transfers on the victim consumers, including by claiming the victim consumers authorized or assisted the EFTs and wire transfers, as a means of justifying Citibank's refusals to refund unauthorized EFTs and wire transfers from Citibank accounts.

## CLASS ACTION ALLEGATIONS

9.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following "Nationwide Class:"

> All natural persons in the Untied State and its territories who had a Citibank account used primarily for personal, family or household purposes that was subject to an unauthorized EFT or wire transfer for which Citibank has not recredited or refunded the full amount of the unauthorized EFTs or wire transfers, save for (i) $50.00 if notice was provided to Citibank within two business days; or (ii) $500.00 if noticed was not provided to Citibank within two business days.

10.     Plaintiffs further bring this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of themselves and the following "New Jersey Subclass:"

> All members of the Nationwide Class who either (i) resided in New Jersey on the date of the unauthorized EFT or wire transfer; or (ii) whose Citibank

8

> account(s) subject to the unauthorized EFT or wire transfer were maintained in a New Jersey Citibank branch.

11.     Plaintiffs further bring this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of themselves and the following "New York Subclass:"

> All members of the Nationwide Class who either (i) resided in New York on the date of the unauthorized EFT or wire transfer; or (ii) whose Citibank account(s) subject to the unauthorized EFT or wire transfer were maintained in a New York Citibank branch.

12.     For purposes of this Complaint, the term "Classes" refers collectively to the Nationwide Class, New Jersey Class and New York Class and the phrase "Class Members" refers to all members of the Classes.

13.     Excluded from the Classes are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff assigned to this action.

14.     Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or further divide the Classes into subclasses or limit the Classes to particular issues, based on the results of discovery.

15.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of FED. R. CIV. P. 23 because there is a well-defined community of interest in the litigation and there is an administratively feasible way to identify Class Members.

16.     **Numerosity of the Class.  Rule 23(a)(1).**  The members of the Classes are so numerous that their individual joinder is impracticable.  Inasmuch as the Class Members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of Class Members can be ascertained.  Members of

the Classes can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

17.     **Existence and Predominance of Common Question of Law and Fact.  Rule 23(a)(2) and 23(b)(3).**  There are questions of law and fact common to the Classes.  These questions predominate over any questions affecting only individual Class Members.  These common legal and factual issues include, but are not limited to:

a.      Whether Defendant violated the EFTA by failing to correct errors on the accounts of Plaintiff and the Classes within 45 days of the transactions being disputed;

b.      Whether Defendant violated UCC Article 4-A by failing to refund unauthorized wire transfers;

c.      Whether the transactions at issue were unauthorized EFTs, by way of a third party fraudulently obtaining access to Plaintiffs and the class members' accounts through fraudulent inducement, making them errors subject to the EFTA's remedial provisions, including Regulation E;

d.      Whether the transactions at issue were unauthorized wire transfers, by way of a third party fraudulently obtaining access to Plaintiffs and the class members' accounts through fraudulent inducement, making them errors subject to the UCC Article 4-A's remedial provisions;

e.      Whether Plaintiff and the Class are entitled to maximum statutory damages, costs, and fees under the EFTA and/or the UCC Article 4-A;

f.       Whether Defendant has engaged in unfair, deceptive and/or unconscionable acts, practices, statements or omissions;

g.      Whether Defendant has been unjustly enriched by its illegal and inequitable conduct;

h.      Whether Defendant must provide damages, restitution and/or reimbursement to unauthorized EFTs and/or wire transfers; and

i.      Whether injunctive relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

18.      **Typicality.  Rule 23(a)(3).**  The claims of the representative Plaintiffs are typical of the claims of each member of the Classes.  Plaintiffs, like all other members of the Classes, has sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Classes were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

19.      **Adequacy.  Rule 23(a)(4).**  The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiffs and Class Members that would make class certification inappropriate.  Counsel for the Plaintiffs and the Classes will vigorously assert the claims of all Class Members.

20.      **Injunctive and Declaratory Relief.  Rule 23(b)(2).**  Defendant's actions regarding its customers' escrow accounts are uniform as to members of the Classes.  Defendant has acted or refused to act on grounds that apply generally to the Classes so that final injunctive relief as requested herein is appropriate with respect to the Classes as a whole.

21.      **Predominance and Superiority of Class Action.  Rule 23(b)(3).**  This suit may be maintained as a class action because questions of law and fact common to the Classes predominate

over the questions affecting only individual members of the Classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual Class Members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.  Further, it would be virtually impossible for the Class Members to individually redress effectively the wrongs done to them. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

22.     Plaintiffs contemplate the eventual issuance of notice to the proposed Class Members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the representative Plaintiffs would contemplate the use of additional media and/or mailings.

23.     In addition to meeting the prerequisites of a Class Action, this action is properly maintained as a class action pursuant to FED. R. CIV. P. 23(b), in that:

        a.     Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual Class Members will create the risk of:

            i.     Inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for the parties opposing the Classes; or

ii.  Adjudication with respect to individual Class Members which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.  The parties opposing the Classes have acted or refused to act on grounds generally applicable to each member of the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole; or

c.  Common questions of law and fact exist as to the members of the Classes and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.  The interests of the Class Members in individually controlling the prosecution or defense of separate actions;

ii.  The extent and nature of any litigation concerning controversy already commenced by or against the Class Members;

iii.  The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv.  The difficulties likely to be encountered in the management of a Class Action.

## **CITIBANK WAS PROVIDED PRE-FILING NOTICE**

24.  Prior the filing of this action, Plaintiffs provided Citibank with written notice of the violations pled in this Complaint and an opportunity to cure.

25.  Citibank did not cure.

## **THERE IS NO AGREEMENT TO ARBITRATE**

26.     There is no agreement between Plaintiffs and Citibank to arbitrate any claims made in this action.

27.     Plaintiff Cassese has not agreed to arbitrate any claims made in this action.

28.     Plaintiff Caligiuri has not agreed to arbitrate any claims made in this action.

**FIRST CAUSE OF ACTION**

**Violation of Electronic Funds Transfer Act and Regulation E**

**(On Behalf of Plaintiffs and the Classes)**

29.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

30.     The Electronic Fund Transfer Act ("EFTA") and Regulation E apply EFTs that authorize a financial institution to debit or credit a consumer's account. Regulation E, 12 C.F.R. §1005.3(a).

31.     An EFT is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account.  *Id.* §1005.3(b)(1); *see also* EFTA 15 U.S.C. §1693a(7).

32.     Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit.  Regulation E, 12 C.F.R. §1005.2(m); *see also* EFTA 15 U.S.C. §1693a(12).

33.     According to the CFPB, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.

34.     In particular, Comment 1005.2(m)-3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud.  As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.

35.     The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers."  Regulation E, 12 C.F.R. §1005.1(b).

36.      Citibank is a financial institution.  EFTA 15 U.S.C. §1693a(9); Regulation E, 12 C.F.R. §1005.2(i).

37.      "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. § 1693d(a), (c), or (d)] or notification pursuant to [15 U.S.C. § 1693(d)] receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. §1693d(b)], the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error.  EFTA, 15 U.S.C. §1693f(a).

38.      After said investigation, the financial institution must determine whether an "error" has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days.  *Id.*

39.      An error includes "an unauthorized electronic fund transfer."  *Id.* §1693f(f).

40.      "If the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error, subject to section 1693g of this title, including the crediting of interest where applicable."  *Id.* §1693f(b).

41.      A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error within ten (10) days of receiving notice is afforded forty-five (45) days after receipt of notice of error to investigate.  *Id.* §1693f(c).

42.      Plaintiffs and members of the classes were are consumer victims of unauthorized EFTs from their Citibank demand deposit, savings, deposit or other asset accounts.

43.      Citibank violated EFTA, 15 U.S.C. §1693f as to Plaintiffs and Classes by, among things, (i) failing to promptly recredit Plaintiffs' and Class members' accounts for unauthorized EFTs;

(ii) failing to make a good faith investigation of reported unauthorized EFTs; (iii) unreasonably concluding that errors in the form of unauthorized EFTs did not occur.  Violations of the EFTA, 15 U.S.C. §1693f should result in treble damages.  *Id.* §1693f(e).

44.     EFTA, 15 U.S.C. §1693g(a) provides, in relevant part:

In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of—

(1)  $50; or

(2)  the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. Notice under this paragraph is sufficient when such steps have been taken as may be reasonably required in the ordinary course of business to provide the financial institution with the pertinent information, whether or not any particular officer, employee, or agent of the financial institution does in fact receive such information.

45.     Regulation E, 12 C.F.R. §1005.6(b), provides, in relevant part:

(b)  Limitations on amount of liability.  A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:

(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

46.     Plaintiffs and all Class members are natural person consumers.

17

47.     The Citibank accounts at issue for Plaintiffs and Class Members are or were demand deposit, savings, deposit, or other asset accounts established primarily for person, family or household purposes.

48.     Plaintiffs and Class Members are victims of unauthorized EFTs from Citibank accounts and entitled to refunds or recredits by Citibank of the unauthorized EFTs.

49.     Citibank violated EFTA, 15 U.S.C. §1693g as to Plaintiffs and Classes by, among things, failing to recredit or refund Plaintiffs and Class Members for unauthorized EFTs as required by EFTA, 15 U.S.C. §1693g and Regulation E, 12 C.F.R. §1005.6.

50.     Plaintiffs and other Class Members notified Citibank of these errors within sixty (60) days of their appearances on their accounts, and oftentimes (like Plaintiffs) sooner.

51.     As a direct and proximate result of the conduct of Defendants, Plaintiffs and other Class Members were unable to reclaim funds that were taken from their Citibank accounts by unauthorized EFTs.

52.     Citibank knowingly and willfully concluded that the EFTs from Citibank accounts of Plaintiffs and other Class members were not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation.  *Id.* §1693f(e)(2).   As a result, in violation of the EFTA and Regulation E, Citibank failed to recredit or refund the amounts of unauthorized EFTs to Plaintiffs and Class Members

53.     Citibank's violations of the EFTA and Regulation E provide a private right of action to Plaintiffs and Class Members.   *Id.* §§ 1693f, 1693m.

54.      To remedy Citibank's violations of the EFTA and Regulation E, Plaintiffs and the Classes seek damages, treble damages, statutory damages, equitable remedies including an injunction and all other appropriate remedies.

55.   In the case of Plaintiffs individually, their actual individual damages, before interest treble damages, statutory damages and other remedies, comprise the $4,409.11 unauthorized EFT that Citibank has refused to refund to Plaintiffs.

**SECOND CAUSE OF ACTION**

**Violation of the Uniform Commercial Code**

**(On Behalf of Plaintiffs and the Nationwide Class)**

56.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

57.     Plaintiffs plead this Count SECOND in the alternative to their claim for violations of the EFTA and Regulation E in the event that the unauthorized transfer(s) from Plaintiffs' and/or Class Members' accounts are deemed to be wire transfers and not EFTs, as EFTs are defined and construed under the EFTA and Regulation E.

58.     Plaintiffs and Class members are customers of Citibank, who is a bank under the Uniform Commercial Code ("UCC"), Article 4-A.

59.     As described in this Complaint, and incorporated herein, Plaintiffs and Class Members are victims of unauthorized fund transfers sent by Citibank without permission or authorization from Plaintiffs' and Class Members' Citibank accounts.

60.     Plaintiffs and Class Members did not provide Citibank with a payment order to send the unauthorized fund transfers, thereby causing them to suffer injury and damages.

61.     As a result, those fund transfers made by Citibank were not authorized, effective or enforceable.

62.     UCC §4-A-204(1) codified in New Jersey (N.J.R.S. §12A:4A-204), New York (N.Y. U.C.C. §4-A-204) and other States within the Unites States substantially provides:

> **(1)** If a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under Section 4-A-202, or (b) not enforceable, in whole or in part, against the customer under Section 4-A-203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.  However, the customer is not entitled to interest from the bank on the amount to be refunded if the

customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding ninety days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order.  The bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section.

63.     UCC §4-A-104 codified in New Jersey (N.J.R.S. §12A:4A-104), New York (N.Y. U.C.C. §4-A-104) and other States within the Unites States substantially provides that a "funds transfer," including wire transfers, are authorized and effective only when it "begin[s] with the originator's payment order, …."

64.     Plaintiffs and Class Members did not provide payment orders to Citibank authorizing the funds / wire transfers pled in this Complaint.

65.     Plaintiffs and Class Members provided notice to Citibank of the unauthorized funds / wire transfers within a reasonable time after learning of the unauthorized funds transfers.

66.     Citibank is liable to refund the unauthorized funds / wire transfers to Plaintiffs and Class Members, plus interest.

67.     In the case of Plaintiffs individually, their actual individual damages, before interest and other remedies, comprise the $4,409.11 unauthorized funds / wire transfer that Citibank has refused to refund to Plaintiffs.

## THIRD CAUSE OF ACTION

### Violation of New Jersey Consumer Fraud Act

### (On Behalf of Plaintiffs and the New Jersey Subclass)

68.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

69.     Plaintiffs are persons and were residents of New Jersey on May 12, 2022 when the unauthorized EFT was taken from their Citibank savings account.

70.     Citibank is a "person" as defined in N.J.S.A. §56:8-1(d).

71.     N.J.S.A. §56:8-2 states in relevant part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or should the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

72.     As alleged herein and above, Defendant engaged in unconscionable commercial practices, deception, and fraud by declining to reverse or to refund charges on the accounts of Plaintiffs and Class Members even though they knew or should have known that said charges were in fact transactions not authorized by Plaintiffs or the Class Members, even when required to do so pursuant to the EFTA and/or Regulation E and/or UCC Article 4-A codified in New Jersey. Defendant engaged in further unconscionable commercial practices, deception, and fraud by failing to adequately investigate the cause of unauthorized transactions from Plaintiffs' and Class Members' Citibank accounts.   Defendant engaged in further unconscionable commercial practices, deception, and fraud by sending form letters misstating that the EFTs or wire transfers were authorized, assisted,

or enabled by Plaintiffs and Class Members so that Citibank would not have to refund the unauthorized EFTs or wire transfers.  These acts and practices violate N.J.S.A. §56:8-2.

73.     Plaintiffs and the New Jersey Subclass have been and continue to be injured as a direct and proximate result of Citibank's violations of N.J.S.A. §56:8-2.

74.     Plaintiffs and the New Jersey Subclass are entitled to pursue a claim against Citibank pursuant to N.J.S.A. §§ 56:8-2.11, 56:8-2.12 and/or 56:8-19 for damages, treble damages, equitable relief, costs and attorneys' fees to remedy Citibank's violations of the NJCFA.

75.     In the case of Plaintiffs individually, their ascertainable loss and individual damages, before interest and statutory damages and other remedies, comprise the $4,409.11 unauthorized EFT or wire transfer that Citibank has refused to refund to Plaintiffs.

## FOURTH CAUSE OF ACTION

### Violation of New York General Business Law § 349

### (On Behalf of Plaintiffs and the New York Subclass)

76.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

77.     Plaintiffs' Citibank savings account ending 3701 was opened and maintained in New York Citibank branch bank.

78.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

79.     Citibank engaged in deceptive methods, acts, practices, and conduct by declining to reverse or to refund charges on the accounts of Plaintiffs and Class Members even though they knew or should have known that said charges were in fact transactions not authorized by Plaintiffs or the Class Members, even when required to do so pursuant to the EFTA and/or Regulation E and/or UCC Article 4-A codified in New York.  Defendant engaged in further deceptive methods, acts, practices, and conduct by failing to adequately investigate the cause of unauthorized transactions from Plaintiffs' and Class Members' Citibank accounts.  Defendant engaged in further deceptive methods, acts, practices, and conduct by sending form letters misstating that the EFTs or wire transfers were authorized, assisted, or enabled by Plaintiffs and Class Members so that Citibank would not have to refund the unauthorized EFTs or wire transfers.  These acts and practices violate N.Y. GBL §349(a).

80.     The foregoing deceptive methods, acts, practices, and conduct, all of which were directed at consumers and were therefore consumer-oriented.

81.     As a result of Defendant's acts and practices, Plaintiffs and members of the New York Subclass have suffered an ascertainable pecuniary and out-of-pocket financial losses equal to the loss of interest they should have received on monies held in their escrow accounts.

82.     In the case of Plaintiffs individually, their actual injury and individual damages, before interest and statutory damages and other remedies, comprise the $4,409.11 unauthorized EFT or wire transfer that Citibank has refused to refund to Plaintiffs.

83.     In addition to their pecuniary losses, Plaintiffs and members of the New York Subclass suffered actual harm as a result of violations of GBL §349(a) by Defendant, including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety.

84.     Plaintiffs and members of the New York Subclass, pursuant to GBL §349(h), seek (1) to recover the greater of actual damages or $50 dollars, or three times actual damages up to $1,000 if it is determined that Defendant willfully or knowingly violated applicable laws; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

85.     New York Subclass members who were sixty-five years of age or older at the time of Defendant's violations of GBL §349 are entitled to additional remedies pursuant to GBL §349-c to redress Defendant's violations of GBL §349(a) perpetrated against elderly persons.

## FIFTH CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs and the Nationwide Class)

86.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

87.     Citibank owed Plaintiffs and the Classes at least a duty to take reasonable steps to safeguard customer financial information and protect their financial accounts from malicious third parties and to properly investigate disputed transactions and unauthorized EFTs and wire transfers.

88.      Citibank breached its obligations to Plaintiffs and Class Members and were otherwise negligent and/or reckless by at least:   (a). Failing to maintain adequate data security measures to prevent or reduce the risk of disclosure of the names, phone numbers, and bank affiliation of Plaintiffs and the Classes to malicious third parties; (b). Failing to adequately protect the private information of Plaintiff and the Classes; (c).  Failing to establish and/or maintain policies, procedures, systems and safeguards to prevent unauthorized transactions and EFTs and wire transfers from Plaintiffs' and Class Members' Citibank accounts.

89.     As a direct and proximate result of Citibank's negligence and breach of its duties, Plaintiffs and Class Members lost funds from their Citibank accounts due to unauthorized EFTs not refunded or recredited by Citibank.

90.     Accordingly, Plaintiffs and Class Members are entitled to damages.

**SIXTH CAUSE OF ACTION**

**Unjust Enrichment**

**(On Behalf of Plaintiffs and the Nationwide Class)**

91.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

92.     Citibank has been conferred the benefit of keeping funds resulting from unauthorized EFTs that it is obligated to refund or recredit to Plaintiffs and Class Members.

93.     Citibank was enriched at the expense of Plaintiffs and members of the Classes.

94.     Under the circumstances, it would be against equity and good conscience to permit Citibank to retain the ill-gotten benefits that it received or retained from failing to pay back unauthorized EFTs and wire transfers taken from Plaintiffs' and Class Members Citibank accounts.

95.     Because Defendant's retention of the benefits it received or retained from failing to pay back unauthorized EFTs and wire transfers would be unjust and inequitable, Plaintiffs and the Classes seek restitution from Citibank and an order from the Court requiring Citibank to disgorge all profits, benefits, and other compensation obtained or retained due to its wrongful conduct.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs ask the Court to enter a judgment:

1.      Certifying of the Classes pursuant to FED. R. CIV. P. 23, certifying Plaintiffs as the representatives of the Classes, and designating its counsel as counsel for the Classes;

2.      Declaring that Defendant has violated the EFTA and Regulation E;

3.      Declaring that Citibank has violated the UCC Article 4-A, including §4-A-204;

4.      Declaring that Defendant has violated the New Jersey Consumer Fraud Act.

5.      Declaring that Defendant has violated New York GBL §349.

6.      Declaring that Defendant has negligently breached its duties owed to Plaintiffs and Class Members.

7.      Declaring that Defendant has been unjustly enriched.

8.      Granting damages, statutory damages where applicable, exemplary damages where applicable, restitution and/or disgorgement to Plaintiffs and the Classes, and the creation of a constructive trust for the benefit of Plaintiffs and the Classes, the amounts of which is to be determined at trial;

9.      Granting declaratory and injunctive relief to enjoin Defendant from engaging in the unlawful described in this Complaint;

10.     Granting punitive damages;

11.     Granting pre- and post-judgment interest;

12.     Granting attorneys' fees and costs; and

13.     Granting further relief as this Court may deem proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury.

DATED:  February 10, 2023                     Respectfully submitted,

                                              **TUSA P.C.**

                                              By:  _/s/_ Joseph S. Tusa
                                              Joseph S. Tusa
                                              joseph.tusapc@gmail.com
                                              P.O. Box 566
                                              55000 Main Road, 2nd Fl.
                                              Southold, NY  11971
                                              Tel. (631) 407-5100

                                              **SCOTT+SCOTT**
                                              **  ATTORNEYS AT LAW LLP**
                                              Joseph P. Guglielmo
                                              jguglielmo@scott-scott.com
                                              The Helmsley Building
                                              230 Park Avenue, 17th Fl.
                                              New York, NY 10169
                                              Tel.  (212) 223-6444

                                              _Attorneys for Plaintiffs and_
                                              _Proposed Classes_